## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DERRICK WOODBERRY**                                    **CIVIL ACTION**

**VERSUS**                                                          **22-979-BAJ-RLB**

**JAMES LEBLANC, ET AL.**

### <u>ORDER</u>

Before the Court is Plaintiff's Motion to Compel Discovery Responses. (R. Doc. 113). The motion is opposed. (R. Doc. 116). Plaintiff filed a Reply. (R. Doc. 121).

**I.    Background**

On December 1, 2022, Derrick Woodberry ("Plaintiff"), while proceeding *pro se* and at the time incarcerated at the David Wade Correctional Center ("Wade"), commenced this action pursuant to 42 U.S.C. § 1983. (R. Doc. 1).

On January 3, 2023, the Court issued a standard case management order for *pro se prisoner* litigation in this district. (R. Doc. 6). This order required defense counsel to "provide to the plaintiff all medical records, administrate remedy proceedings, unusual occurrence reports, and all other documents pertinent to the issues in this case" within the deadline set by the Order. (R. Doc. 6 at 1). In addition to this "mandatory discovery," the Court allowed the parties to "serve upon one another additional written discovery requests . . . limited to *10 interrogatories, 5 requests for production of documents,* and *10 requests for admissions*," with each discovery request and response to be filed into the record. (R. Doc. 6 at 2).

On February 22, 2024, the district judge issued a Ruling and Order directing Plaintiff to file an amended Complaint and providing Plaintiff with the opportunity to request the

appointment of Counsel. (R. Doc. 43). Plaintiff then filed an Amended Complaint (R. Doc. 44) and sought the appointment of counsel (R. Doc. 47).

On May 1, 2024, the Court granted, in part, Plaintiff's motion for the appointment of counsel, requesting volunteers from the Court's Civil Pro Bono Counsel panel. (R. Doc. 50).

Prior to the enrollment of counsel, the Court again ordered Defendants to "provide to the plaintiff all medical records, administrate remedy proceedings, unusual occurrence reports, and all other documents pertinent to the issues in this case" given their failure to comply with the Court's earlier orders. (R. Doc. 58; *see* R. Docs. 6, 40). On July 12, 2024, the defendants filed a "Notice of Compliance" stating that they had provided Plaintiff with the following documents, which have been filed into the record:

1) A Certified Copy of Plaintiff's Medical Records dated January 2019 to August 2023;

2) Certified Copy of ARP EHCC-2022-324;

3) Certified Copy of ARP EHCC-2022-388; [and]

4) Certified Copy of Plaintiff's Master Prison Record dated January 2019 to July 2023.

(R. Doc. 60; *see* R. Docs. 60-1 to 60-4).

The district judge then allowed *pro bono* counsel to seek enrollment on Plaintiff's behalf. (R. Doc. 61). Plaintiff's counsel was enrolled on August 21, 2024. (R. Doc. 66).

On November 22, 2024, Plaintiff, now represented by counsel, filed his Second Amended Complaint, alleging he was previously incarcerated at Elayn Hunt Correctional Center ("Hunt"). (R. Doc. 79). In the Second Amended Complaint, Plaintiff seeks relief from the following officials at Hunt: Assistant Warden (and former Deputy Warden) Jason Russ; Colonel (and former Assistant Warden) Donald Johnson; Lead Investigator (and former Assistant Warden) Brandy Landry; and (former Lieutenant Colonel) Jason Linzy (collectively, "Defendants").

2

Plaintiff alleges that he was transferred from the Louisiana State Penitentiary ("LSP") to Hunt in September 2019 after being attacked by an inmate. (R. Doc. 79 at 3).

Plaintiff alleges violations of the Eighth Amendment with respect to a coordinated and retaliatory attack on him while previously incarcerated at Hunt on April 21, 2022, and violations for the First Amendment with respect to the filing of a lost property claim and a grievance claim against Donald Johnson, including the alleged retaliatory transfer to Wade where he had known enemies.[1]

On January 23, 2025, the Court issued a Scheduling Order requiring, among other things, all non-expert discovery to be completed by May 16, 2025 and dispositive motions to be filed by August 1, 2025. (R. Doc 87). The Scheduling Order did not vacate the limitations on discovery detailed in the *pro se prisoner* case management order.

On May 16, 2025, Plaintiff filed an *Unopposed* Motion to Extend Discovery Deadline, stating that additional time was needed to conduct written discovery and to complete certain depositions, further representing that neither party would need to conduct any expert discovery in this action. (R. Doc. 88). The Court granted the motion, extending the deadline to complete non-expert discovery to July 2, 2025. (R. Doc. 89).

On June 2, 2025, Plaintiff served **20** interrogatories and **44** requests for production on each of the Defendants. (*See* R. Doc. 103-2).

On June 24, 2025, Defendants responded to the discovery requests by stating that they were working on providing formal responses by July 2, 2025, but that "due to the vast number of requests and the number of objections the Defendants intend to raise we are producing all documents and media which appear to be discoverable and responsive to the propounded

---

[1] At some point after the filing of the Second Amended Complaint, Plaintiff was transferred back to LSP. (*See* R. Doc. 94).

requests, most, if not all, of which were produced previously in Defendants' Initial Disclosures" provided to Plaintiff on February 3, 2025. (R. Doc. 103-3). The parties agreed to further extensions beyond the Court's deadlines without seeking any modification of the Court's deadlines. (*See* R. Doc. 103-6, 103-7).

The **<u>extended</u>** discovery deadline of July 2, 2025 came and went without the filing of any discovery motions. Then, on August 1, 2025, Defendants filed a Motion for Summary Judgment. (R. Doc. 96). In response, Plaintiff filed a Motion to Suspend Summary Judgment Pending the Completion of Discovery. (R. Doc. 100). Through that motion, Plaintiff sought an order suspending or denying the Defendants' motion for summary judgment without prejudice, "pending the completion of discovery in this matter, pursuant to Fed. R. Civ. Proc. R. 56(d)." (R. Doc. 100 at 1). In support of this motion, Plaintiff submitted copies of the June 2, 2025 discovery requests (R. Doc. 100-2) and specifically sought responses to those discovery requests. (*See* R. Doc. 100-1 at 12). Plaintiff also sought to take the outstanding deposition of Donald Johnson. (R. Doc. 100-1 at 3-4).

On September 25, 2025, while the foregoing Rule 56(d) motion remained pending, Plaintiff filed his initial Motion to Compel, which sought an order compelling responses to the written discovery served on June 2, 2025, as well as dates for the outstanding deposition of Donald Johnson. (R. Doc. 103). Without referencing any specific written discovery requests, Plaintiff argued that the discovery sought was targeted on "core" issues. (R. Doc. 103-1 at 7). Despite having failed to file the motion to compel prior to the **<u>extended</u>** discovery deadline, Plaintiff argued that Defendants have "waived" their objections to the written discovery sought. (R. Doc. 103-1 at 6-7).

On October 9, 2025, the district judge granted Plaintiff's Rule 56(d) motion, denied Defendants' motion for summary judgment without prejudice to refile after the resolution of Plaintiff's motion to compel, and referred the matter to the undersigned to set a deadline for Defendants to file a renewed motion for summary judgment after the resolution of Plaintiff's motion to compel. (R. Doc. 104). Given the foregoing, the undersigned issued a notice to counsel providing the following: "Discovery is reopened for the sole purpose of resolving the Plaintiff's Motion to Compel, which is deemed timely filed. No further motions related to discovery will be considered." (R. Doc. 105).

On November 13, 2025, the Court denied Plaintiff's initial Motion to Compel without prejudice to refile. (R. Doc. 110). In this ruling, the Court recognized that in seeking relief pursuant to Rule 56(d), Plaintiff specifically argued that 7 interrogatories and 13 requests for production at issue sought "facts essential to justify Plaintiff's opposition to Defendants' Motion for Summary Judgment:

> [L]ooking at the substance of the requests, they are narrowly-tailored to uncover information related to Defendants' prior conduct, and the institutional practices at issue in this litigation and the incidents set forth in the Second Amended Complaint (R. Doc. 79). More specifically, the Discovery Requests seek the identity of all persons with knowledge of facts of the relevant incident (Exh. A at ROG No. 15); Defendants' communications about Mr. Woodberry (*Id.* at RFP Nos. 1 and 10); information surrounding the handling of Mr. Woodberry's property (Exh. A at ROGs 7-10); the investigation of Plaintiff's complaints (*Id.* at ROG No. 11); the policies, procedures, and training materials relative to housing inmates, inmate transfers between facilities, administrative segregation, shakedowns, return of inmate personal property and anti-discrimination/anti-harassment (*Id.* at RFP Nos. 11, 32-37 and ROGs No. 6-10); Plaintiff's accident, injury, or incident reports (*Id.* at RFP No. 19); records of prior discipline (*Id.* at RFP No. 7) and Defendants' personnel files (*Id.* at RFP No. 39). Plaintiff requires responses to these requests to establish the pattern of retaliation, deliberate indifference, and constitutional violations alleged in the Second Amended Complaint, to quantify the damages suffered by Mr. Woodberry as a result of Defendants' actions which is necessary to establish facts to respond to Defendants' summary judgment. Exh. J – Mathews Decl. at ¶¶ 8-10.

Additionally, one of Plaintiff's requests is for Defendants to produce unedited video footage and surveillance of the incidents he complains about. (Exh. A at RFP Nos. 25-26) Elayn Hunt surveillance videos of the April 21, 2022 incident involving Plaintiff and Depton Jones produced with Defendants' initial disclosures contain interrupted segments with blue screens. When defendants were asked about the cause of the blue screens during their depositions, their answers varied.

(R. Doc. 100-1 at 5-6).

Given the foregoing, the Court allowed Plaintiff to proceed with limited discovery with respect to the specific written discovery requests referenced in the Rule 56(d) motion: Interrogatory Nos. 6-11, 15, and Request for Production Nos. 1, 7 10, 11, 19, 25-26, 32-37. (R. Doc. 110 at 12). In doing so, however, the Court did not issue any ruling on whether these requests sought information within the scope of discovery or were otherwise objectionable. The Court also denied Plaintiff's motion with respect to the other discovery requests given that they sought "virtually all information and documents that could possibly pertain to this civil action or Plaintiff in general." (R. Doc. 110 at 3).

The Court required Defendants to respond or object to the foregoing written discovery requests on an expedited basis. The Court further ordered the parties to meet-and-confer to the extent any disagreements remain regarding this limited set of written discovery requests. Finally, the Court informed the parties that it would reset the deadline to file Rule 56 motions after the instant discovery dispute is fully resolved.

After Defendants provided objections and responses as ordered, the parties held a discovery conference on November 26, 2025. (R. Doc. 113-2). Few details of counsel's discussions regarding the discovery requests at issue are provided. Plaintiff represents, however, that "[a]s a result of the conference, Defendants produced several DPSC policies that counsel for Defendants indicated could be responsive to Plaintiff's Requests for Production. (R. Doc. 113-3

at 2). Plaintiff's instant renewed Motion to Compel seeks an order compelling supplemental productions in response to Request for Production Nos. 1, 10, 11, 25, 26, 32-37. (R. Doc. 113).

In the instant motion, Plaintiff focuses on Defendants' objection to these requests for production on the basis that they are not in "possession, custody/ or control" of responsive documents or information maintained by the Louisiana Department of Public Safety and Corrections ("DPSC"). Plaintiff argues that "Defendants have control over the requested documents because of their relationship with the DPSC, the non-party entity in possession of the documents, is sufficient to enable them to obtain and produce these materials," given that "[o]fficials, including wardens, assistant wardens, deputy wardens, and officers, are directly employed by and affiliated with the DPSC." (R. Doc. 113-3 at 3-4). Plaintiff notes that Defendants have produced other "documents clearly derived from the DPSC systems in the initial disclosures, including prison records and investigative documents," which "serves as evidence that these Defendants have the ability to obtain additional responsive documents through DPSC." (R. Doc. 113-3 at 4).

Plaintiff does not reference any specific jurisprudence providing that assistant wardens or correctional officers have "control" over DPSC documents for the purposes of Rule 34(b). Furthermore, Plaintiff does not however, raise **_any_** arguments in his opening brief regarding Defendants' objections based on irrelevance, overbreadth, vagueness, undue burden, and lack of proportionality.

In opposition, Defendants represent that notwithstanding their objections to the requests as "exceedingly broad, vague, and unduly burdensome based upon the unlimited (or exaggerated) timing of the request or the incredible vagueness of the request[s]," Defendants obtained and produced additional documents in response to the requests. (R. Doc. 116 at 1-2).

Defendants represent that, in addition to advising Plaintiff's counsel that responsive documents "are maintained by and/or in the custody and control" of the DPSC, counsel discussed the objections based on overbreadth and vagueness, leading to a supplemental production of DPSC policies:

> During the conference between counsel, Plaintiff's counsel was advised that, due to the sheer breadth and vagueness of the requests, it could not be determined what, if any, documents beyond what had been produced (either previously or in response to the Court-limited discovery) may actually be responsive to Plaintiff's requests without blindly requesting from DPSC a massive collection of documents in hopes that there might be something that somehow relates to the claims at issue in this case. Plaintiff's counsel was, similarly, unsure of what documents are believed to still be missing or have gone unproduced; however, over the course of the conference, undersigned was able to obtain enough information from Plaintiff's counsel to determine and produce several additional DPSC policies that were believed to potentially be sufficiently related and responsive to Plaintiff's requests so as not be utterly irrelevant to the current proceedings.

(R. Doc. 116 at 2). Acknowledging that they have produced some documents obtained from DPSC, Defendants assert that "the fact that those documents were previously requested and obtained does not mean that the Defendants have possession, custody, or control over any other documents that are in the actual possession, custody, and control of DPSC." (R Doc. 116 at 5).

In reply, Plaintiff argues that the documents produced in the supplemental production "are responsive to Request for Production Nos. 32-35, 37, and partially to No. 36" and otherwise demonstrate that Defendants have "possession, custody, or control" of DPSC documents. (R. Doc. 121 at 1). Plaintiff does not state whether the instant motion is moot with respect to those document requests. Plaintiff also, for the first time, argues that Defendants' remaining objections are "boilerplate" and should be disregarded. (R. Doc. 121 at 4).

## II.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). A party may move to compel the production of documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv).

**B.      Analysis**

**1.      Possession, Custody, or Control**

Plaintiff's motion focuses on whether and to what extent the individual Defendants in this action have possession, custody, or control over responsive documents and information. Accordingly, the Court will briefly address this issue before turning to whether, and to what extent, the document requests are objectionable as irrelevant, overly broad, vague, unduly burdensome, or disproportionate to the needs of this case.

Rule 34 requires that a responding party produce responsive documents that are within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Documents are deemed to be within the "possession, custody, or control" of a responding party if that party either has "actual" possession, custody, or control of the documents or if that party "has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Estate of Monroe v. Bottle Rock Power Corp.,* No. 03-2682, 2004 WL 737463, at * 10 (E.D. La. April 2, 2004). "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *Id.* (citing *Commerce and Industry Ins.*

*Co. v. Grinnell Corp.,* Nos. 97–0775, 97–0803, 98–2200, 2001 WL 96337, at *3 (E.D. La. Feb.

1, 2001)). The burden, however, is on the party seeking discovery to make a showing that the

other party has control over the documents sought. *Id.* "When determining the sufficiency of

control of material for purposes of Rule 34, the nature of the relationship between the party and

the non-party is the key." *Id.*; *see MacNair v. Chubb Eur. Grp. SE*, No. 23-761, 2024 WL

663652, at *6 (E.D. La. Feb. 16, 2024) ("In determining the sufficiency of control over material

for discovery purposes, the nature of the relationship between the party and the non-party is

key.").

      There can be no dispute that Defendants must produce responsive documents and

information in their **<u>actual</u>** possession, custody, or control (in light of their current positions at

Hunt) unless the Court sustains their objections to the requests for production. The Court

recognizes, however, that Plaintiff has not set forth any Fifth Circuit decision definitely

providing that an employee's "practical ability" to obtain documents from an employer satisfies

"control" for the purposes of Rule 34(b). Indeed, the Fifth Circuit has recognized a distinction

between "access" and "possession, custody, or control" in the context of reviewing a Rule 45

subpoena to a non-party. *See Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*,

348 F.R.D. 54, 67 (E.D. La. 2024) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812,

821 (5th Cir. 2004)). In *Wiwa*, the subpoena at issue requested documents in the "control,

possession, or have access to [sic]" of a non-party individual formerly employed with an oil

company. *See Wiwa*, 392 F.3d at 815. The Fifth Circuit agreed that in this context the implied

phrase "to which he has access" was overly broad as it would require the retrieval of documents

(potentially from Nigeria) not under the non-party individual's "custody, control, or possession,

but to which he could conceivably have access by virtue of his prior position with" his former

employer. *Wiwa* 392 F.3d at 821. Defendants argue that *Wiwa* supports a finding that the Fifth Circuit rejects the "practical ability" test with respect to determining "control" pursuant to Rule 34(b). (R. Doc. 116 at 4-5). In fact, *Wiwa* does not address whether and to what extent a current employee has "control" over an employer's documents in the context of responding to a Rule 34 request.[2]

At any rate, neither party has cited any decision directly addressing whether an assistant warden or correctional officer has "control" over DPSC documents for the purposes of Rule 34(a). Arguably, there is a sufficient employment relationship between the individual Defendants still employed by Hunt and the DPSC for the purposes of establishing "control" over documents relevant to Hunt and the underlying incidents. Notably, each of the individual Defendants is represented by an Assistant Attorney General provided by the Office of the Louisiana Attorney General of the Louisiana Department of Justice. Throughout this litigation, Defendants have requested and obtained documents from the DPSC, demonstrating their "practical ability" to do so. (*See* R. Doc. 116 at 5). If the "practical ability" test is applicable, then the individual Defendants still employed by Hunt would arguably have "control" over relevant DPSC documents. *See Estate of Monroe*, 2004 WL 737463, at * 10.

Some federal district courts have applied "practical ability" test to reach a comparable conclusion. *See Gross v. Lunduski*, 304 F.R.D. 136, 142-43 (W.D.N.Y. 2014) (concluding that

---

[2] Defendants also rely on *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite."). The *Chaveriat* decision does not address the context of a current employer-employee relationship between the responding party and the non-party. *See Strom v. Am. Honda Motor Co.*, 667 N.E.2d 1137, 1143–44 (Mass. 1996) ("*Chaveriat* dealt with separate corporations, where the entity possessing the materials had had a prior contractual relationship with the litigating party against whom the discovery demand was made, but no present tie or incentive to assist either party to the dispute.") (citing *Chaveriat*, 11 F.3d at 1423, 1426-1427). In fact, courts have recognized that the *Chaveriat* decision does not "require a degree of control tantamount to a master-servant relationship before Rule 34 requires production." *Engel v. Town of Roseland*, No. 3:06 CV 430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007).

the individual defendant, a correctional officer employed by the N.Y. Department of

Correctional and Community Services ("DOCCS"), had "control" over DOCCS documents for

the purposes of Rule 34(a) where, among other things, defense counsel was an assistant N.Y.

Attorney General who had the practical ability to acquire from DOCCS many of the documents

requested by the plaintiff); *see also Guillory v. Skelly*, No. 12-00847, 2014 WL 4542468, at *8

(W.D.N.Y. Sept. 11, 2014) ("Here, although DOCCS is not a party to this action, the relationship

between DOCCS and Defendants, all DOCCS employees[,] is sufficiently closely coordinated to

find Defendants have practical access and control over the requested documents."). At least one

district court, however, has rejected this analysis. *See Robinson v. Moskus*, 49zx1 F. Supp. 3d

359, 366 (C.D. Ill. 2020) (rejecting the "practical ability" test over the "legal right" test in

concluding that the plaintiff in litigation against correctional officer employed by the Illinois

Department of Corrections ("IDOC") must seek IDOC documents by Rule 45 subpoena).

   Here, Plaintiff has not met his burden of establishing that the individual Defendants in

this action have possession, custody, or control over DPSC documents. In the absence of more

detailed briefing – including the potential impact on prisoner litigation, the employer-employee

relationship at issue, and the logistics of document sharing between DPSC and correctional

facilities – the Court will not issue a definitive ruling with respect to "control" over DPSC

documents and information in the context of this litigation. Importantly, and as discussed further

below, the Court will only compel a limited subset of documents and electronically stored

information sought. To the extent these documents are not in the actual possession, custody, or

control of Defendants, **or that DPSC will not voluntarily turn them over to defense counsel

for production as it has in numerous other cases in this district**, then the Court will provide

Plaintiff an opportunity to seek these documents and information from the DPSC by subpoena.

### 2.    Requests for Production Nos. 11, 32-37

Plaintiff's Requests for Production Nos. 11, 32-37 collectively seek the production of

policies and procedures, whether contained in training manuals or otherwise, on various topics:

**REQUEST FOR PRODUCTION NO. 11:**
Any and all documents, training materials, handbooks, guides, etc. containing all
antidiscrimination, anti-harassment, and anti-retaliation training provided to you
for your current employment role.

**REQUEST FOR PRODUCTION NO. 32:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures for housing inmates next to or near known enemies in the
Louisiana prison system.

**REQUEST FOR PRODUCTION NO. 33:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures for transferring inmates to and from facilities with known
enemies in the Louisiana prison system.

**REQUEST FOR PRODUCTION NO. 34:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures related to "shakedowns" in the Louisiana prison system.

**REQUEST FOR PRODUCTION NO. 35:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures related to "administrative segregation" in the Louisiana
Prison System.

**REQUEST FOR PRODUCTION NO. 36:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures taken to return an inmate's personal property, including
whether there would be an instance where an officer would refuse to return an
inmate's personal property.

**REQUEST FOR PRODUCTION NO. 37:**
Any and all documents, training materials, handbooks, guides, etc. containing all
policies and procedures taken when an inmate reports missing personal property.

(R. Doc. 113 at 3-7). Defendants objected to these requests on the basis that they are "overly

broad, vague, unduly burdensome, and not proportional to the needs of this case," further stating

that any responsive documents would be in the possession, custody, or control of the DPSC.  (R.

Doc. 113 at 3-7). Each Defendant refers Plaintiff to the production of his responsive "Training Record." (R. Doc. 113 at 3-7).

In reply, Plaintiff concedes that the production of DPSC policies after the parties' November 26, 2025 appear to be "responsive to Request for Production Nos. 32-35, 37, and partially to No. 36." (R. Doc. 121 at 1). Plaintiff does not, however, identify any additional responsive documents or information (in light of Plaintiff's counsel's review of this supplemental production or the parties' discovery conference) that have not been obtained and produced by Defendants. Plaintiff also does not reference any other discovery – including the referenced Training Records or deposition testimony – indicating that any sought policies and procedures have not been produced.

That said, there is no dispute that responsive policies and procedures are relevant to the claims and defenses in this action. The Court will narrow these discovery requests to all training materials or handbooks containing policies and procedures regarding prisoner management in effect at Hunt between February 2019 – June 2022.  This limited set of policies and responses falls within the scope of discovery.

Within **7 days** of the date of this Order, Defendants shall produce any and all documents, as limited above, in their actual possession, custody, or control. Defendants shall specify whether any known responsive documents are held by the DPSC that Defendants cannot produce based on their objection of lack of "control" over DPSC documents. If so, Plaintiff may immediately seek such documents from the DPSC by Rule 45 subpoena and file an appropriate notice into the record.

### 2.    Requests for Production Nos. 1 and 10

Plaintiff's Requests for Production Nos. 1 and 10 collectively seek the production of

"[a]ny and all" correspondences and communications related to Plaintiff (for the past ten years)

or the subject matter of this lawsuit in general:

> **REQUEST FOR PRODUCTION NO. 1:**
> Any and all correspondence or writings you authored or received, including but
> not limited to emails, text, and memos related to Plaintiff from the past ten years.
>
> **REQUEST FOR PRODUCTION NO. 10:**
> Any and all text messages, emails, social media messages, or other
> communications regarding, relating to, or referencing in any way to the incidents
> that is the subject of this lawsuit.

(R. Doc. 113 at 2-3).[3] Defendants objected to these requests on the basis that they are irrelevant

and "overly broad, vague, unduly burdensome, and not proportional to the needs of this case,"

noting that the requests fail "to identify any reasonable documents or information sought" related

to the underlying incidents that "occurred on or around February 2019 – June 2022." (*See* R.

Doc. 113 at 2-3).

Rule 34(b) provides that a request for production or inspection "must describe with

reasonable particularity each item or category of items to be inspected" or produced. Fed. R. Civ.

P. 34(b)(1)(A). "The test for reasonable particularity is whether the request places the party upon

reasonable notice of what is called for and what is not." *Lopez v. Don Herring Ltd.*, 327 F.R.D.

567, 575 (N.D. Tex. 2018) (citation and internal punctuation omitted). "Therefore, the party

requesting the production of documents must provide sufficient information to enable the party

to whom the request is directed to identify responsive documents." *Id.* "The goal is that the

---

[3] Plaintiff lists the discovery requests and responses at issue in his Motion to Compel as required by Local Rule 37.
Plaintiff notes that identical discovery was issued to each of the individual Defendants, who provided responses and
objections that "are nearly identical except each contains a specific reference to the responding Defendant." (R. Doc.
113 at 2 n.1).

description be sufficient to apprise a man of ordinary intelligence which documents are required." *Id*. "All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *Id*.; *see also McCoy v. SC Tiger Manor, LLC*, No. 19-723-JWD-SDJ, 2021 WL 1321303, at \*4 (M.D. La. Apr. 8, 2021) (sustaining objections based on overbreadth, vagueness, ambiguousness, undue burden, and inappropriate shifting of burden to determine the documents referenced in requests for certain "documentary evidence" in violation of Rule 34(b)(1)(A)).

Neither party outlines what counsel discussed regarding these particular document requests at the discovery conference. Both of these document requests seek, in part, information outside of the scope of discovery. Request for Production No. 1, while limited to the particular communications by each Defendant related to Plaintiff, includes an arbitrary and expansive 10-year temporal period. Request for Production No. 10, while ostensibly limited to the "subject of this lawsuit" is neither limited in time nor custodians.

Despite having held a discovery conference, Plaintiff fails to identify any reasonable subset of communications limited in time or subject matter. Indeed, in seeking the opportunity to obtain responses to these discovery requests to respond to Defendants' Motion for Summary Judgment, Plaintiff solely states that he seeks "Defendants' communications about Mr. Woodberry." (R. Doc. 100-1 at 6). Even after being provided an opportunity to address Defendants' objections, Plaintiff offers no articulable basis for seeking virtually every communication about him made in the past ten years. Plaintiff has made no attempt to narrow these requests, including any limitation to particular custodians or search terms with respect to electronically store information.

That said, the Court recognizes the importance of relevant communications involving the individual Defendants regarding the specific issues raised in the Complaint. Accordingly, the Court will require Defendants to conduct a diligent search and produce all responsive correspondence (including emails) pertaining to the incidents detailed in Plaintiff's complaint for the periods between February 2019 – June 2022. With respect to emails, a search for Plaintiff's surname (Woodberry) in each Defendants' work email account for the applicable time period will satisfy this requirement.

Within **7 days** of the date of this Order, Defendants shall produce all communications, as limited above, in their actual possession, custody, or control. Defendants shall specify whether any known responsive communications are held by the DPSC that Defendants cannot produce based on their objection of lack of "control" over DPSC documents. If so, Plaintiff may immediately seek such communications from the DPSC by Rule 45 subpoena and file an appropriate notice into the record.

### 3.    Requests for Production Nos. 25 and 26

The final two requests seek the production of unedited body camera footage. The first request is overly broad and fails to make any rational attempt at limiting the sought camera footage to any particular claims or incidents detailed in the Second Amended Complaint:

> **<u>REQUEST FOR PRODUCTION NO. 25:</u>**
> Copies of all unedited body camera footage, unedited surveillance tape recordings, unedited photographs, or other unedited picture media from five minutes before any incidents up until five minutes after any incidents involving Plaintiff within the past ten years.

Plaintiff has offered no reasonable limitation on the foregoing request, which literally includes all video and photographs of Plaintiff over the past ten years. The Court will sustain Defendants' objections based on overbreadth with respect to this document request.

Finally, Plaintiff seeks an unedited version of a video that has already been produced in this litigation:

**REQUEST FOR PRODUCTION NO. 26:**
Copies of unedited footage of "HCC 22E095 fight" video without the edited blue screen frames.

**RESPONSE TO PRODUCTION NO. 26:**
Defendant objects to this request to the degree it assumes that such a version of the video does or has ever existed. Without waiving such objection, Defendant does not have in her possession, custody, or control the requested documents or information. Upon information and belief, such records are maintained by the Louisiana Department of Public Safety and Corrections and have not been edited. Defendant therefore refers Plaintiff to the Louisiana Department of Public Safety and Corrections for any responsive information or documents. Defendant further refers Plaintiff to Mr. Anthony LaCour, an employee of the Louisiana Department of Public Safety and Corrections whose work involves the installation and maintenance of the surveillance cameras at Elayn Hunt Correctional Center and whom Plaintiff's counsel was made aware of and referred to for questions relating to alleged editing of surveillance footage on June 30, 2025, during the deposition of Defendant.

(R. Doc. 113-4 at 11).

Again, Plaintiff does not raise any specific arguments regarding this video in support of this motion. It appears that the video is a recording of the April 21, 2022 attack referenced in the Second Amended Complaint. (*See* R. Doc. 79 at 15-17). Plaintiff specifically referenced this video in seeking the opportunity to obtain discovery to respond to Defendants' Motion for Summary Judgment: "Elayn Hunt surveillance videos of the April 21, 2022 incident involving Plaintiff and Depton Jones produced with Defendants' initial disclosures contain interrupted segments with blue screens. When defendants were asked about the cause of the blue screens during their depositions, their answers varied." (R. Doc. 1001-1 at 6). The Court has confirmed that the underlying videos filed conventionally into the record contain periods of blue screen interruptions. (*See* R. Doc. 99). It is unclear whether these blue screen interruptions reflect the state of the actual recordings or involved some sort of editing.

19

Within **7 days** of the date of this Order, Defendants shall produce any and all versions of the videos responsive to Request for Production No. 26 in their actual possession, custody, or control. In their supplemental response, Defendants shall specify whether any known versions of the videos without blue screen interruptions are held by the DPSC that Defendants cannot produce based on their objection of lack of "control" over DPSC documents. If so, Plaintiff may immediately seek versions of the videos without blue screen interruptions from the DPSC by Rule 45 subpoena and file an appropriate notice into the record.

## III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion to Compel Discovery Responses (R. Doc. 113) is **GRANTED IN PART and DENIED IN PART.**  The parties shall bear their own costs.

**IT IS FURTHER ORDERED** that Defendants must provide supplemental productions and responses consistent with the body of this Order within **7 days** of the date of this Order. Plaintiff must immediately notify the Court of any necessary Rule 45 subpoena.

**IT IS FURTHHER ORDERED** that the Court will issue a separate Amended Scheduling Order.

Signed in Baton Rouge, Louisiana, on January 21, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**